Yes, here, Carrie, on behalf of Miss Karen Olson and Miss Olson is present here in the front row also. And incidentally, Miss Olson is now 70 years old and has no criminal record, no involvement until this case. She was convicted of making false statements and misprision of a felony. And the there is insufficient evidence of a trial presented of either charge. The Can I ask you to, because I'm a little confused about the record here, maybe I need some help on the record. The charges arise out of the application that was made in effect to, for the government to subordinate its lien, right? Correct. And the statements in that with respect to the value of these pieces of equipment, I don't think anybody contests are incorrect. Yes, we do contest that. Oh, you think the pieces of equipment were worth... Yes. You contest that the statements were not, you say the statements were not false. Correct. Okay, tell me why. Because Miss Olson was told that these were the values... No, I'm sorry. She may have not believed them to be false. I understand that to be your defense. But we start out with the premise that these pieces of equipment weren't really worth what the statement says they were. The $35,000 and the $50,000, I submit the government failed to prove that that wasn't what they were worth. Well, I thought there was evidence that they were in effect used equipment and had been purchased instead of the pieces of equipment for which the invoices were given. Put aside your client's knowledge for a second because I want to work backwards. Okay. It seemed to me there was a lot of evidence in this case that the statements were incorrect. There was at trial one individual, Mr. Sanders, who was responsible for inflating the values. He's the only evidence that... Yes, coming from him only. Right, but it's enough to establish the fact. If the jury believes him. If the jury believes him. You're making a sufficiency of the evidence argument, right? Yes. So I'm trying to look at the elements of sufficiency and focus on the ones that are at issue in this case. He testified that the values were incorrect. The jury was entitled to believe him. So the only question, I think, is whether or not your client knew the values were incorrect. Is that a fair statement? I can go with that. Okay. But we do contest that those were... Okay. The state failed to prove it. There was no expert and this is the gentleman who lied and inflated them in the first place. But that's up to the jury. That's a jury question. The jury can believe any witness or just believe them. To go back to the question of what your client knew, there's evidence that she asked that some statements be corrected, some internal records be corrected because she learned about something that had occurred in this case. Why doesn't that evidence establish her knowledge? No, I don't believe that there's any evidence that she asked that these values of $35,000 and $50,000 be changed. She became aware of Mr. Boyce's other involvement, other issues, but not this issue as being an incorrect value. Okay. Go ahead and let me see if I can find the point in the record I'm talking about. She was told that these were the values. She was never corrected or said these are inflated, these aren't worth this much. The government submits that she knew that they were worth less because ultimately they ended up leasing the equipment rather than purchasing it. But even that wasn't proven. There's no details of this lease. What was the term of it? What was the value of it? Nothing about the lease, it's just it's leased instead of outright bought. But I think you have to assume, you're required to assume that therefore it's worth less, but there's no proof that it's worth less. Who bore the responsibility of maintaining this equipment and fixing it? The owner could have done that. The government failed to present any evidence of what this lease involved and who bore the responsibility of fixing these items. So I don't agree that she had any knowledge, that ever had any knowledge that these numbers were wrong. Could you go to the exhibit from her day planner and explain how that relates to what you're arguing? Because that's SER 280. That's where she talks about straightening out Kyle's mess and learning of questionable deals. Okay, thank you. Nether and Kyle spent $190,000 of her grant on others. Right. So Nether is way over budget. He misused our BOW advance dollars as his own stock purchase, exclamation point. Did the same for MC, another $75,000. Yes, I agree that Ms. Olsen became aware of Boyce's financial fiasco with what he was doing with the records. That does not directly relate to the thing that she was charged with, which is these two specific pieces of evidence. And she corrected these mistakes that Mr. Boyce had been engaging in. She made him pay back the money that he had sort of diverted for his other company. So your contention, I take it, is that while she knew Mr. Boyce? Buse. Buse. Mr. Buse was engaged in some bad activities, and she knew Mr. Buse had been in charge of buying these two pieces of equipment. She didn't have any specific knowledge of what he did with these two pieces of equipment? That's correct. There's no evidence of it. But my question is, could the jury have inferred from her knowledge of his extensive otherwise misdoings that his statements about these two pieces of equipment were wrong also? That's, in fact, what they did by convicting her, but they're not entitled to say that she knew that Mr. Buse was engaged in these other wrongdoings, therefore she knew that. Well, let me play this out and see if you can respond to it, and you may be right. We take as a fact that the values were established to be incorrect by the testimony of Mr. Sanders or Mr. Buse, and that she attested that they were correct and that she got the information from him and she knew he had lied about a bunch of other stuff. Is that enough to establish the guilt in this case? No, there's a premise that's wrong. It's not that she knew that Mr. Sanders had lied about a bunch of other stuff. Mr. Sanders is the one who gave the values, but Mr. Buse is other, you know. I don't know so much that he lied about a bunch of stuff. I mean, he didn't disclose some stuff, but I don't, and I think it's Mr. Sanders who's the one who came up with these values, so I don't think she can infer anything about Mr. Sanders from what Mr. Buse. Is the statement that Kyle spent $190,000 of our grant on others include what appears to be a kickback scheme in this case, or is that about something else? I believe that that's the grant money going from Buse to Sanders and then Sanders being the project manager. There's nothing inherently wrong with him being the project manager. No, no, but we all know that a crime occurred here. The question is, I mean, there's plenty of evidence that a crime occurred here by others than your client. The question is whether she knew about it. Well, correct, but I also, yeah, for the misprision count, I think that there's no evidence that Ms. Olson knew back in 2008 that Mr. Buse had committed a crime, and the government didn't present what crime. It has to be a federal felony. It can't be a misdemeanor. It can't be any other sort of offense, and not just this wrongdoing and being bad with the books and things like that. It has to be a specific false statement that she knew back in 2008. There's no evidence of that. The only thing they have is at trial they asked, you knew he was convicted, but there's no details of anything. It could have been a misdemeanor. It could have been a state violation. So there's complete lack of evidence regarding the misprision count. Did you want to say? You're arguing that she may have known of misconduct, but she didn't know it was a felony? Well, that's one of the arguments, correct. She didn't know it was a felony, and what she knew at the time of trial is irrelevant to what she knew in 2008. She didn't conceal anything. She didn't know that any invoices submitted by Buse were actually false. And once again, in her mind, these valuations are correct. So is the case in the indictment charged with related to her submission for a further grant? Is that it, not what she may have learned later on and failed to disclose to the government when she did become aware? For the misprision, they're charging that she knew that Buse had committed felonies, specific felonies. But they didn't provide evidence of it, of what the felonies were. Maybe we should hear from the government now, and then I'll give you some time for rebuttal. Thank you. Good morning. My name is Retta Randall. I'm an assistant U.S. attorney, and I represent the United States in this case. If I may respond to your questions or the issues raised by counsel in the reverse order, starting with the misprison, which is really the second issue on appeal. First of all, Kathy Ruiz, the FBI agent, testified at the trial that to transcript at pages 636 to 37 exactly what Mr. Buse had been convicted of, making false statements to the United States under 1014, and also a mail fraud, I believe, a wire fraud. She was very clear in saying that those offenses were felonies. That's not the trial. The question is, and under the statute, the person has to know at the time. That's my next point. You need to recall Mrs. Olson's background. She was an excellent grant writer. She was very active in this grant, even though the USDA did not know she was a full partnership. She went to every meeting that Mr. Wells had with the USDA. She's also familiar with grants and loans from being a previous USDA employee. When she went to sign the grant paperwork, one of the things that she was present at and was signed by both Mr. Buse and Mr. Wells is the warning that is set out in my brief where if you make a false statement. Look, there's no doubt that making a false statement is a crime. There's no doubt that I assume in this record that the defendant was aware of that. The question is, what's the evidence that she was aware that the statements, and this all turns on the statements in the subordination application, if you will, the letter that goes with it, which says these two pieces of equipment are worth X and Y, right? Those are the allegedly false statements. Correct. That's a little bit different than the misprision. I understand. The question in both is, what did she know with respect to those values at the time that she made those? When did she know? When did she know at the time? With respect to the misprision of a felony, what did she know? What was the misprision that she did? What was her nature of non-reporting? She knew that she discovered in September of 2008, when she was doing the financial analysis, that Mr. Buse had gotten kickbacks from the grant money. So that's what the date planner is rolling to? Yes. And that's the misprision count. She knew, though, that that had been a misuse of grant funds. She should have gone and reported that to the USDA. But if I may back up, because the evidence for both of these offenses is commingled, they submit the first invoice for the disbursement in the end of 2007. And that is what Mr. Sanders testified about, that all of that equipment, those values, he had been asked to basically inflate, especially in the cleaning places. But the evidence seems to be she didn't know that at the time. She did not know that at that time. Late in December of 2007 into January of 2008, she finds out, and Rob Wells finds out, and Rob Wells testified about the leased equipment also, that Mr. Buse had leased equipment from Matanuska Maid and had not purchased the items that they thought had been purchased with the grant funds from the first disbursement. And she discovers that when? In January of 2008. Okay. So your argument is that having discovered that in January of 2008, I'm looking now at the false statements count. Her representations in the later application, if you will. I know it's really a letter appended to the application. Right, and that didn't happen until November of 2008. Right, so that she had prior knowledge of the falsity of those values. She knew by the time she submitted that document, she carried all the values, and it was just easier to focus on the glycol and the CIP, the clean and place system. She carried all those values across all of the documents submitted to the USDA. Even though in January of 2008, she knew that those weren't even assets of the USDA that they could put a lien against because those items were leased. She then, as part of that. So for your false statements count, it really doesn't matter what they were worth, does it? Because they weren't assets of the USDA. In other words, is your argument that they were overvalued, or is your argument they weren't assets at all? They were not paid for by the grant funds because Mr. Buse had used money that was supposed to have purchased them in a different manner to actually fund his restaurant and to pay other items that were the stock in BLW. But when she submitted this November 18th letter to the USDA asking them to segregate the lien, she is representing that they have an interest in all of the assets that she has listed. And those values are quite minimized. It's like $85,000 less than what is actually here. In addition, she knows that the money given pursuing to the grant didn't even go to pay for some of this equipment. It had to come out of other sources. So she knows these numbers aren't correct. What's the letter exhibit? I'm sorry, it's a supplemental excerpt of Record 35. It's Exhibit 9, which goes through the jury instructions. It was the only false statement that really was the basis of the charge. Right. What I would submit is that one of the things she did to cover up this activity was when a grand jury subpoena was issued to her in 2011 to produce records for the Rob Wells Company. It's at that time that she submits the first invoice and has it marked superseded. So that is when she is definitely not telling a person in authority that those numbers were falsified, that the monies hadn't gone to pay for them. She then testifies that those items were canceled because all the items on the first invoice were now leased. The reason the jury didn't have to believe her testimony, she says when she's asked about the items, she testified at page 660 of the transcript. That was draw number 2, and that was $50,000. Note, though, the CIP was for $8,750, and the glycol chiller for $2,500 are actual values that were placed on that equipment. And she also testified that she knew those were old pieces of equipment that were going to be very problematic. Mr. Wells testified as to the same thing. One of the records she does not produce during the grand jury subpoena, but later found pursuant to a search warrant, is a document or set of documents at Supplemental Excerpt of Record 256, where she has figured out in September of 2008 what Mr. Buse did. Not only had he leased equipment, not only were the documents not correct, the values weren't correct. And part of that is where she is itemizing the items from the first exhibit that were leased, listing those values. She puts the clean and place system at $8,700 and the glycol chiller at $2,500. And so the jury could very easily know, or could imply by this time, in September of 2008 she's aware of Buse's activities, that those values are totally incorrect. Sorry, what was the saying on that one? The documents from the search warrant or Supplemental Excerpts of Records 254 through 256. And those were admitted into evidence before, and the jury had an opportunity to look at them. Yes. Can I ask you a question that isn't briefed, but maybe you can explain it to me? The argument with respect to the false statement is that she overinflated the... She, no, and that's where the defense... Opposing counsel didn't try to answer that. She's not charged with the overinflation. She's charged with perpetuating the numbers submitted by Mr. Buse. Okay, but with respect, is there a requirement of materiality? For a false statement, no. For the no-fraud scheme, yes. Because it seems to me by telling the government it had a larger interest than it actually had, if they decided to subordinate to large interest, had they known it was smaller, they probably would have subordinated that too. But if materiality is not an issue, then it doesn't matter. The only other thing I would like to point out is... Basically, the jury had no questions in this case. They were also able to compartmentalize the evidence. We did closings on Monday morning. They went out a little afternoon on Monday afternoon and came back the following day around noon. There were no jury questions. And what they were able to show is that they obviously understood the evidence. Does that really matter in a case where the defense says the evidence was legally insufficient? The jury may have... That's a question of law for us, not a question for the jury. I submit that if you look at her continuing pattern of behavior, as I laid out chronologically in the brief, there's more than sufficient evidence to show that she knew those statements were false and she went to a great deal of effort to protect Mr. Buse. Thank you. Thank you, counsel. Can I just get one clarification? Do you read the misprison statute as requiring that the defendant know it's a felony, that there has to be evidence that they know it rises to the level of a felony? Correct, and I think the jury could infer because that warning says it's up to 5 years in prison. That's not something to sneeze at. Thank you. Okay. Regarding that point, I would like to point out that one of the elements is that a felony in violation of the U.S. Code was committed as charged in the indictment. The jury had no idea what was in the indictment. They never read the indictment, never told what's in the indictment.  They can't find that he committed a felony as charged in the indictment when they don't know what's there. Regarding the valuations, I think still there's a difference that was pointed out at trial between the clean-in-place unit and the system. And the valuations that she perpetuated, this $50,000 and $35,000, had to do with the complete installment of the entire system for these things, which is a tremendous amount of money. In fact, she testified that it's probably undervalued. And we didn't have time to touch on the jury instruction errors, but I would like to point out also that you cannot tell what findings the jury made. The instruction on making a fault statement didn't identify a fault statement at all. So we don't have any special verdict. This was a very long, complicated trial. The government just threw so much at it, and these other allegations of not responding to the subpoena completely and things like that, that just try and paint her as a bad person. Rather than submitting actual proof, they submitted other evidence, which just shows that Mr. Boost committed some wrongdoing. She didn't cover it up. She fixed the wrongdoings that he did. And there's insufficient evidence of both of the charges, and the jury wasn't properly instructed. Okay. Thank you.
judges: Fisher, Paez, Hurwitz